UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JHONY GUEVARA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SPARTAN ENTERPRISES, LLC, *et al.*, <br><br> Defendants. | Civil Action No.  20-1383 (JEB) |

### MEMORANDUM OPINION

Plaintiffs are electricians formerly employed by Defendant Spartan Enterprises to work at Defendant Bozzuto Construction Company's development project in Southeast Washington. In this suit, they principally demand additional overtime wages under the federal Fair Labor Standards Act and the D.C. Minimum Wage Act. Plaintiffs now move for conditional class certification under the FLSA's "collective action" provision, 29 U.S.C. § 216(b), seeking to create a conditional class of electricians who worked on the same project and whose overtime wages were calculated in the same allegedly improper way. Defendants oppose, mainly on the ground that Plaintiffs' wages were, in fact, correctly calculated. Because the Court does not weigh conflicting facts at this time and because it finds that Plaintiffs have made the required "modest factual showing" that the putative class members are similarly situated, it will grant their Motion, conditionally certify the proposed class, and provide parameters for identifying and giving notice to class members.

**I.    Background**

According to the Complaint, the allegations of which must for now be presumed true, Jhony Guevara and Alexis Loza worked as electricians for Spartan Enterprises in 2017–19 and

1

2018–19, respectively. See ECF No. 1 (Compl.), ¶¶ 31, 34. During "a significant portion of" that time, id., ¶¶ 33, 36, they worked at the construction site of the Harlow Apartments in Southeast Washington. Id., ¶¶ 18–19. Bozzuto Construction Company was building those Apartments pursuant to a contract with the city government — just over 20% of the new units are public housing — and subcontracted the electrical work to Spartan. Id., ¶¶ 18, 21, 23–26; ECF No. 18 (Spartan Opp.) at 2. Plaintiffs bring this action against Spartan as their direct employer and Bozzuto under the theory that it "at all times . . . had full authority" over Plaintiffs "as if [they] were performing work directly for Bozzuto." Compl., ¶¶ 25–27.

The parties' dispute centers on the calculation of both regular and overtime wages. Pursuant to its contract with the city, Bozzuto had agreed to compensate regular electrician hours worked on the 36 public-housing units in the Apartments at $43.70 per hour. Id., ¶¶ 29–30; Spartan Opp. at 2. Electrician hours worked on the remainder of the 179 total units were not subject to that agreement, so instead were paid at a "market rate[]" of $17.00 or so per hour. See Compl., ¶ 39; Spartan Opp. at 3. Based on this dual-rate compensation structure, rates for overtime were to be calculated at one and a half times the weighted average of the rates according to the proportion of hours actually worked at each type of unit. See Compl., ¶ 44 (quoting 29 CFR § 778.115).

In their Complaint, Plaintiffs allege that Spartan committed two particular wage violations within this set-up. First, they allege that it "generally and customarily" paid them "about 20% or less of their weekly non-overtime wages" at the $43.70 rate, even though they "performed about 25% to 30% of their electrician duties" on the public-housing units, thus violating the D.C. Wage Payment and Wage Collection Act (DCWPA). Id., ¶¶ 37–38, (emphasis added); see also id., ¶ 40 (estimating that Spartan failed to correctly pay them at the higher rate

2

for "about 2–4" regular hours worked per week); id., ¶¶ 80, 83(a).  Relatedly, Plaintiffs allege that their overtime rate was also incorrectly calculated: instead of being weighted according to the proportion of hours worked at the different types of units, the rate was simply calculated at one and a half times the lower market rate.  Id., ¶¶ 45–46, 81, 83(b).

Spartan disputes this second allegation, which is the only one for which Plaintiffs presently seek conditional certification.  It asserts that it regularly paid a weighted overtime rate — specifically, one that assumed each electrician worked 20% of his hours on the higher-paid public-housing units and 80% on the lower-paid units.  See Spartan Opp. at 7–10; ECF No. 18-1 (Decl. of Judy Brown), ¶¶ 6–7, 10, 13, 16–20 (explaining that Bozzuto instructed Spartan to calculate wages, including overtime, as if 20% of workers' hours were spent on the higher-rate public-housing units and providing illustrative examples of Plaintiffs' paychecks).  It does not, however, dispute Plaintiffs' allegations that they actually worked 25% to 30% of their time on the public-housing units.

Plaintiffs' Motion to certify and accompanying declarations assert that there is a class of at least twenty other electricians employed by Spartan who worked alongside them at the Apartments and were subject to the same improper overtime wage calculations.  See ECF No. 17-1 (Pls. Memo) at 3–4; ECF Nos. 17-2 (Guevara Decl.); 17-3 (Loza Decl.) (all putting the number at around twenty individuals); but see Compl., ¶ 56 (suggesting that the class might comprise up to forty individuals).  They now move for the certification of a conditional class of those electricians not paid correct overtime wages under the FSLA and DCMWA.  See ECF No. 17 (Mot.).

**II.     Analysis**

The Court will begin by outlining the law regarding conditional certification in FLSA and DCMWA cases and then apply it to the allegations here.  Finding certification appropriate, it last discusses appropriate notice procedures.

   A. FLSA and DCMWA Collective Actions

Employees who assert violations of the FLSA's and DCMWA's provisions may bring actions on their own behalf and that of "other employees similarly situated" in a collective action.  See 29 U.S.C. § 216(b); see also D.C. Code § 32-1308(a)(1)(C) ("Actions may be maintained . . . on behalf of all employees similarly situated . . . .").  "This unique cause of action . . . is not subject to the numerosity, commonality, and typicality rules of a class action under Rule 23."  Hunter v. Sprint Corp., 346 F. Supp. 2d 113, 117 (D.D.C. 2004); see also Castillo v. P & R Enterprises, 517 F. Supp. 2d 440, 444 (D.D.C. 2007).  Instead, although the D.C. Circuit has not yet spoken on the issue, district courts "in this Circuit and others have settled on a two-stage inquiry for determining when a collective action is appropriate" under the FLSA and the DCMWA.  Dinkel v. MedStar Health, Inc., 880 F. Supp. 2d 49, 52 (D.D.C. 2012) (FLSA); Stephens v. Farmers Restaurant Group, 291 F. Supp. 3d 95, 105–06 (D.D.C. 2018) (DCMWA); Castillo, 517 F. Supp. 2d at 445 n.3.

The first stage requires only a "modest factual showing sufficient to demonstrate that [named] and potential plaintiffs together were victims of a common policy or plan that violated the law."  Castillo, 517 F. Supp. 2d at 445 (quoting Chase v. AIMCO Props., 374 F. Supp. 2d 196, 200 (D.D.C. 2005)).  The factual showing need only clear a low bar.  See, e.g., Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008) (describing plaintiff's burden as "not particularly stringent," "fairly lenient," "flexible," and "not heavy") (citations omitted);

4

Dinkel, 880 F. Supp. 2d at 52 (describing "a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist") (citation omitted); McKinney v. United Stor-All Centers, Inc., 585 F. Supp. 2d 6, 8 (D.D.C. 2008) ("The court employs a lenient standard in making this determination . . . .").

Given the narrowness of the inquiry at the first stage, "district courts should ordinarily refrain from resolving factual disputes and deciding matters going to the merits." Dinkel, 880 F. Supp. 2d at 53 (citing Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)); Camper v. Home Quality Mgmt. Inc., 200 F.R.D. 516, 520 (D. Md. 2000) (provisionally certifying despite "factual disputes"). Of course, plaintiffs' modest factual showing must suggest some actual "violat[ion] [of] the law." Castillo, 517 F. Supp. 2d at 445 (quoting Chase, 374 F. Supp. 2d at 200); see also In re Family Dollar FLSA Litig., 637 F.3d 508, 519 (4th Cir. 2011) (explaining that "[w]ithout a viable claim," named plaintiff "cannot represent others" in FLSA collective action, no matter how similarly situated).

At the second stage — which is not yet at issue— defendants may move at the close of discovery to decertify the conditional class if the record establishes that the plaintiffs are not, in fact, similarly situated. See Castillo, 517 F. Supp. 2d at 445. It is at this stage that a court's inquiry is typically more searching. See, e.g., Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 51 (3d Cir. 1989) (at second stage, courts examine whether all putative class members "(1) [were] employed in the same corporate department, division and location; (2) advanced similar claims []; and (3) sought substantially the same form of relief"), overruled on other grounds by Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089 (3d Cir. 1995).

### B. Propriety of Certification Here

The Court finds that Plaintiffs clear the low first-stage hurdle here. The proposed class is similarly situated to a sufficient degree, and the Court cannot presently find, as Defendants suggest, that Plaintiffs failed to plead a violation of the law.

Plaintiffs seek to certify a class under the FLSA and the DCMWA comprising anyone who was "employed by Spartan and/or Bozzuto, to perform electrician and related work duties on units at [the Harlow Apartments] within the last three . . . years"; worked more than forty hours in any workweek during that time; and was not paid by Spartan at the properly weighted rate for overtime. See Pls. Memo at 2; see also Compl., ¶ 52. (Although the Complaint also described a putative class under the DCWPA that included electricians who were paid at the lower market rate for regular hours worked on the public-housing units, regardless of overtime, the present Motion does not seek to certify that class. See Compl., ¶ 54.)

As alleged and as sworn, see Guevara Decl., Loza Decl., members of the proposed class here worked for the same employer, performed the same type of work at the same location during the same time period, were paid the same or similar hourly rates, and were reimbursed according to the same system of calculating payment. Such a proposed class satisfies the similarly situated requirement. See, e.g., Castillo, 517 F. Supp. 2d at 446 (finding putative class of janitorial employees of same employer similarly situated where they worked overtime without receiving overtime compensation, although they worked at different buildings, had different job titles, only some were unionized, and some were full-time workers and some part-time). Spartan's retort that putative class members had "varying roles, with varying pay rates, and with varying levels of overtime work," Spartan Opp. at 10, is insufficient to overcome the class's manifold similarities.

Spartan, it should be noted, spends most of its energy arguing that the class should not be certified because the claims fail as a matter of law.  Plaintiffs, it asserts, were correctly paid. Spartan explains that it regularly compensated them as if each worked 20% of his hours on public-housing units and 80% of his hours on market-rate units, both when calculating regular and weighted overtime wages.  See Spartan Opp. at 7–10; Brown Decl., ¶¶ 6–7, 10, 13, 16–20. Presumably, Bozzuto arrived at this 80/20 split because 36 public-housing units out of 179 total units represents 20.11% of the units in the complex.  Spartan asserts that it suffices to defeat the Motion that it paid Plaintiffs in line with this "required cost allocation formula" for the project. See Spartan Opp. at 10.  But this ignores Plaintiffs' allegations that they spent more than 20% of their hours working on the higher-rate units.

In other words, even accepting Spartan's proffered facts as true, they do not negate all aspects of Plaintiffs' claim.  Because Plaintiffs assert that they and other class members "performed about 25% to 30% of their electrician duties" on the public-housing units, see Guevara Decl., ¶¶ 6–7; Loza Decl., ¶¶ 6–7, weighting overtime according to an 80/20 split would result in too low of an overtime rate.  Plaintiffs accordingly have adequately pled a practice that violates the FLSA and DCMWA.

The Court will thus conditionally certify Plaintiffs' proposed class.  In so certifying, it accepts Bozzuto's suggestion that the class be limited to those who performed electrician duties, see ECF No. 19 (Bozzuto Opp.) at 7, as no facts have been pled relating to non-electrician work. The Court also notes that it reads the fourth element of the proposed class, which describes people "[w]ho were not paid by Spartan at the [correct rate]," to limit the class to employees of Spartan.  See Pls. Memo at 2 (emphasis added).

    C.  <u>Notice</u>

Beyond the question of conditional certification, the parties also disagree as to what form of class notice is appropriate. Plaintiffs seek from Defendants "a production of names, last known mailing addresses, last-known cell phone numbers, email addresses, and dates of employment of all putative plaintiffs," as well as the "ability to distribute the notice and opt-in form via first class mail and email and text message to all putative plaintiffs of the conditionally certified collective, with a reminder mailing to be sent 30-days after the initial mailing to all non-responding putative plaintiffs." Mot. at 1–2. Spartan "agrees to disclose putative class member names, last known addresses, and dates of employment," but not phone numbers or email addresses, and instead requests that "notice be limited to a single notice delivered by U.S. Mail." Spartan Opp. at 11. Spartan grounds its position in other courts' concerns about overburdening defendants, intruding upon notice recipients, stirring up litigation, and implying judicial endorsement. <u>See</u> Spartan Opp. at 12 (citing <u>Byard v. Verizon W. Va., Inc.</u>, 287 F.R.D. 365, 372 (N.D. W. Va. 2012)).

Neither side contests that the Court has discretion with regard to notice. <u>See, e.g.</u>, <u>Engers v. AT&T</u>, No. 98-3660, 2007 WL 1557163, at *1 (D.N.J. May 24, 2007) ("Decisions as to whether to facilitate notice to potential plaintiffs, and how to facilitate it, are matters entrusted to the district court's discretion.") (citation omitted). The Court bears in mind that "[t]he overarching policies of the FLSA's collective suit provisions" are to provide adequate notice, such that "potential plaintiffs can make informed decisions about whether to participate." <u>Whitehorn v. Wolfgang's Steakhouse, Inc.</u>, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (cleaned up). To balance Plaintiffs' legitimate need to contact class members with Spartan's various concerns, the Court will order that Defendant provide, in usable electronic format, the names,

last-known addresses, email addresses, and dates of employment of putative plaintiffs, as well as the cell-phone number of any class member for whom Spartan does not have an email address.

Spartan's request that notice by email be disallowed to avoid risk of electronic alteration and unauthorized distribution such as by forwarding or posting online, see Spartan Opp. at 13 (citing Sharma v. Burberry Ltd., 52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014) and Shaia v. Harvest Mgmt. Sub LLC, 306 F.R.D. 268, 276 (N.D. Cal. 2015)), must be weighed against the fact that email is a ubiquitous method of communication that may be more effective than U.S. Mail at ensuring receipt, especially if class members have moved since they last gave Spartan their home addresses. The Court finds that the balance tips in Plaintiffs' favor.

If Spartan does not have a putative class member's email address on file, it should instead provide that person's cell-phone number. Courts have come out different ways on whether sending notice via telephone is appropriate. Compare Hernandez v. Immortal Rise, Inc., No. 11-4360, 2012 WL 4369746, at *9 (E.D.N.Y. Sept. 24, 2012) ("Since defendants fail to present any compelling reason for the Court to exercise particular caution in this case, . . . the Court finds no reason to exclude discovery of opt-in plaintiff telephone numbers at this time."), with Encinas v. J.J. Drywall Corp., 265 F.R.D. 3, 7 (D.D.C. 2008) ("Because plaintiffs have not specially justified their need for access to putative class members' phone numbers, the defendants will be ordered to produce only the names and last known addresses of putative class members."). Although Plaintiffs have suggested that they would like access to cell-phone numbers in order to text putative class members, they have not explained why texting is necessary. See Pls. Memo at 15. Given that Plaintiffs will already be receiving class members' email addresses, the Court finds it reasonable to limit production of telephone numbers to those people for whom Spartan

does not have an email address, thus affording Plaintiffs one additional, non-U.S. Mail way to notify each class member.

Spartan also challenges the mailing of a reminder notice to potential opt-in plaintiffs who do not initially respond. Courts are also split on the propriety of reminder notices. See, e.g., Morris v. Lettire Construction, Corp., 896 F. Supp. 2d 265, 274 (S.D.N.Y. 2012) (citing cases demonstrating that "[c]ourts . . . have reached divergent conclusions"). The Court determines that sending one reminder notice cannot seriously be considered "stirring up litigation"; as it does not come from the Court, it is unlikely to be construed as improperly implying judicial endorsement of the litigation. See, e.g., Jones v. Cretic Energy Services, LLC, 149 F. Supp. 3d 761, 776–77 (S.D. Tex. 2015) ("[B]ecause defendant has failed to show that the proposed reminder notices will prejudice or burden defendant unduly, the court concludes that plaintiff's proposal to send reminder notices is appropriate."). Plaintiffs may accordingly send one reminder notice via email (or text if email is not available) and one via U.S. Mail to any putative class member who does not initially respond.

As Spartan suggests, any notice to a putative class member whose dates of employment fall outside of the statute of limitations should be advised that their claims may ultimately be deemed untimely. See Spartan Opp. at 13. In addition, as Plaintiffs appear not to object, notice should include the other information that Spartan seeks: that members may be deposed and subject to discovery obligations, that they may retain other counsel, Defendants' position regarding Plaintiffs' claims, and Defendants' counsel's contact information. Id. The Court last suggests that Plaintiffs check their notice materials to ensure that no copy-and-paste errors remain before sending them to class members.

### III.     Conclusion

For the foregoing reasons, the Court will grant Plaintiffs' Motion for Conditional Class Certification with the Notice provisions set out above.  A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 23, 2020